UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DONNA MARIE JORDAN,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | CASE NO. 3:16-cv-05370-DWC<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff Donna Marie Jordan filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of her application for disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 4.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when he failed to properly evaluate Dr. C. Michael Regets's opinion regarding Plaintiff's IQ score. Because the IQ test score is directly relevant to whether Plaintiff meets a Listing, the ALJ's error is harmful. Therefore, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

FACTUAL AND PROCEDURAL HISTORY

On August 14, 2006, Plaintiff filed an application for SSI and DIB, alleging disability as of February 10, 2006. *See* Dkt. 12, Administrative Record ("AR") 430-34. The application was denied upon initial administrative review and on reconsideration. *See* AR 178. A hearing was held before Administrative Law Judge ("ALJ") Verrell Dethloff on October 21, 2008. *See* AR 178. In a decision dated November 7, 2008, the ALJ determined Plaintiff to be not disabled. *See* AR 178-92. On June 5, 2009, the Appeals Council granted Plaintiff's administrative review and remanded the matter to ALJ Dethloff. AR 26, 193-97. On remand, Plaintiff received a second hearing before ALJ Dethloff, who again found Plaintiff not disabled on October 20, 2011. AR 26, 198-236. The Appeals Council again granted Plaintiff's administrative review and remanded the matter for reconsideration. AR 26, 232-36.

Upon remand, Plaintiff, represented by counsel, appeared at a hearing on April 10, 2014 before ALJ Michael Gilbert, as did a vocational expert. AR 26. In a decision dated September 3, 2014, ALJ Gilbert determined Plaintiff to be not disabled. AR 26-53. The Appeals Council denied Plaintiff's administrative appeal on January 29, 2016, making the ALJ's decision the final decision of the Commissioner. AR 9; 20 C.F.R. § 404.981, § 416.1481. Plaintiff now appeals the third decision finding Plaintiff not disabled.[1]

Plaintiff maintains the ALJ erred by: (1) improperly rejecting the medical opinion of C. Michael Regets, Ph.D.; and (2) failing to find Plaintiff's impairment satisfies a Listing. Dkt. 14, p. 1. Plaintiff also includes a section entitled "A Comment on Credibility" in her brief, but Plaintiff has not assigned any error to the ALJ's credibility determination. Dkt. 14, p. 13.

---

[1] When stating "the ALJ" or "the ALJ's decision" throughout this Order, the Court is referring to ALJ Gilbert or his September 2014 decision.

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

### DISCUSSION

**I.     Whether the ALJ Properly Evaluated the Medical Evidence.**

Plaintiff argues the ALJ erred in evaluating the medical opinion of C. Michael Regets, Ph.D. Dkt. 14, pp. 4-8. Specifically, Plaintiff avers the ALJ improperly rejected Dr. Regets's opined IQ score, "placing [Plaintiff] in the bottom 1% of the population." *Id.*

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Dr. Regets completed a confidential vocational evaluation on October 9, 2007. AR 960-70. Dr. Regets conducted a clinical interview, charting Plaintiff's social and developmental history, and conducted several tests, including a Wechsler Individual Achievement Test, ABLE reading

comprehension, Wechsler Adult Intelligence Scale III, Stroop Color and Word Test, P3 Pain inventory, and Gordon Occupational Checklist 2. AR 960. Dr. Regets observed Plaintiff had good eye contact, demonstrated good interpersonal skills, and "[t]here was no evidence of poor effort." AR 961-62. Dr. Regets also noted "[t]est scores today are regarded as a valid and reliable assessment of her current level of functioning." AR 962.

Plaintiff scored a full scale IQ of 74, "which places her intellectual functioning in the Borderline range and above that of approximately 4% of her peers." AR 964. Dr. Regets opined "[t]here is a 95% chance that her true IQ falls in the range of 70-79 … [but Plaintiff's] unique set of thinking and reasoning abilities make her overall intellectual functioning difficult to summarize … because there are large discrepancies between the scores that compose either the Verbal scale or the Performance scale." AR 964. Thus, Dr. Regets opined Plaintiff's "performance may be more appropriately described by the separate scores contributing to the Verbal scale or the Performance scale." AR 964. Dr. Regets determined Plaintiff's verbal IQ score is 67 and her performance IQ score is 86. AR 965.

Dr. Regets diagnosed Plaintiff with Disorder of Written Expression, Developmental Reading Disorder, Mathematics Disorder, and Borderline Intellectual Functioning. AR 966. He also opined Plaintiff's "performance across [intellectual functioning] domains suggests some variability in her abilities." AR 966. He also charted his "hunch is that test scores do not fully tap the combined abilities of emotional and intelligence quotient" for Plaintiff adding "[h]er personality and social capability likely pull her through in situations where deficits in cognitive strength can be overlooked[.]" AR 967. He also opined Plaintiff's "[w]ork history and aptitude level suggest [Plaintiff] is capable of learning lengthy repetitive procedures" and her "[s]cores

are consistent with individuals who are able to successfully complete junior college/vocational school programs provided reading and writing are significantly deemphasized." AR 967.

The ALJ gave "some weight" to Dr. Regets's opinion. AR 47. The ALJ noted Plaintiff's "tendency to exaggerate and/or feign symptoms undermine the validity of her IQ scores, which are given less weight." AR 47. The ALJ determined the remainder of Dr. Regets's opinion regarding Plaintiff's ability to work "is consistent with the objective medical evidence and with the claimant's demonstrated abilities." AR 47. Thus, the ALJ agreed with Dr. Regets's opinion "that the claimant's work history and aptitude level suggested that she would be able to learn lengthy, repetitive procedures, and could apply commonsense understanding to carrying out detailed, but uninvolved, written or oral instructions." AR 47.

When determining whether Plaintiff meets a listing, the ALJ noted Dr. Regets identified Plaintiff scored a 67 on the verbal IQ score, but the ALJ observed "Dr. Regets noted that the claimant's 'unique set of thinking and reasoning abilities make her overall intellectual functioning difficult to summarize … because there are large discrepancies between the scores that compose either the verbal scale or the performance scale.'" AR 34-35 (quoting Dr. Regets's medical opinion). The ALJ also noted Dr. Regets "found that the claimant's nonverbal reasoning abilities and abilities to process visual information were much better developed than her verbal comprehension skills and her working memory skills." AR 35. The ALJ observed a doctor performing a subsequent psychological evaluation—E. Andrea Shadrach, Psy. D—determined Plaintiff's scores were invalid on a different test because of Plaintiff's "excessive number of infrequent responses" which is uncommon even with patients who have credible symptoms. AR 35. Thus, given Plaintiff's "symptom exaggeration and/or malingering", the ALJ determined "there are validity concerns regarding claimant's IQ testing/scores." AR 35. The ALJ also

determined Dr. Regets's opinion regarding Plaintiff's ability to work in "various vocational aptitudes that fit with the claimant's educational history, work history, and test measures … demonstrates that the claimant's adaptive functioning is above the threshold set out" in the listing of impairments. AR 35.

The parties dispute what legal standard applies to Dr. Regets's opinion. Plaintiff argues Dr. Regets's opinion was uncontroverted because no other expert opined regarding Plaintiff's IQ, and thus Plaintiff asserts the ALJ was required to provide clear and convincing reasons to discount Dr. Regets's IQ score. Dkt. 14, p. 6. Defendant notes other doctors considered Plaintiff's psychological functioning, and at least one found she was capable of simple work despite her mental impairments. Dkt. 15, p. 6. Thus, Defendant argues the Court should evaluate whether the ALJ's treatment of Dr. Regets's opinion is supported by specific and legitimate reasons supported by substantial evidence. *Id.* The Court need not address the parties' dispute because the ALJ's reason for discounting Dr. Regets's medical opinion regarding Plaintiff's IQ score is neither clear and convincing nor specific and legitimate and supported by substantial evidence.

Plaintiff argues the ALJ erred in discounting Dr. Regets's determination regarding Plaintiff's score of 67 on the verbal IQ test. Dkt. 14, pp. 4-8. The Court agrees. The ALJ discounted Plaintiff's IQ scores because of her "tendency to exaggerate and/or feign symptoms." However, "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199–200 (9th Cir. 2008) (citing and quoting *Edlund v. Massanari,* 253 F.3d 1152, 1159 (9th Cir. 2001) ("In sum, the ALJ appears to have relied on her doubt's [sic] about [the claimant's] overall credibility to reject the

entirety of [the examining psychologist's] report, including portions that [the psychologist] deemed to be reliable.")).

Moreover, while Dr. Shadrach may have determined Plaintiff was malingering or was less than credible, *see* AR 35, Dr. Shadrach made that determination more than four years after Dr. Regets's determination based upon a different test and her own observations. *See* AR 1097-1102. Importantly, the ALJ fails to explain why Dr. Shadrach's observations and test scores are more credible than Dr. Regets's observations. *See* AR 34-35, 47. Indeed, here, Dr. Regets specifically determined "[t]here was no evidence of poor effort" and "[t]est scores today are regarded as a valid and reliable assessment of her current level of functioning." AR 961-62. There is nothing in Dr. Regets's typed, single-spaced ten-page opinion or anywhere else in the record to suggest that Dr. Regets disbelieved Plaintiff's description of her symptoms, or that Dr. Regets relied on those descriptions more heavily than his own clinical observations and test results in reaching his conclusion regarding Plaintiff's IQ scores. *See Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1300 (9th Cir. 1999) (substantial evidence did not support ALJ's finding that examining psychologists took claimant's "statements at face value" where psychologists' reports did not contain "any indication that [the claimant] was malingering or deceptive"). While inaccurate test results can be a specific and legitimate reason to discount Dr. Regets's opinions regarding Plaintiff's IQ, *see Bullene v. Astrue*, No. C12-808-MJP-MAT, 2012 WL 6917774, at *8 (W.D. Wash. Oct. 18, 2012), *report and recommendation adopted,* No. C12-808MJP-MAT, 2013 WL 228642 (W.D. Wash. Jan. 22, 2013) (citing *Thomas v. Barnhart*, 278 F.3d 947 (9th Cir. 2002)), the ALJ cannot rely upon another doctor's opinion regarding a *different* test result and that doctor's opinion regarding Plaintiff's credibility to discount Dr. Regets's medical opinion.

Accordingly, without an adequate explanation as to why Dr. Regets's observations are not credible, the Court cannot determine if the ALJ's reasoning is specific and legitimate and supported by substantial evidence, nor can the Court determine if the ALJ adequately considered the IQ test result. *See*, *e.g.*, *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (an ALJ errs when he rejects a medical opinion or assigns it little weight when asserting without explanation another medical opinion is more persuasive).

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

Had the ALJ properly considered Dr. Regets's opinion regarding Plaintiff's IQ score, he may have made a different determination regarding whether Plaintiff satisfies Listing 12.05C. "A claimant satisfies Listing 12.05C, demonstrating "intellectual disability" and ending the five-step inquiry, if he can show: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation." *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C). As the ultimate disability determination may have changed, the ALJ's error is not harmless and requires reversal. *Molina*, 674 F.3d at 1115.

**II.     Whether the ALJ Properly Determined Plaintiff Does Not Meet a Listing.**

Plaintiff asks the Court to determine Plaintiff is disabled at Step Three, finding she meets Listing 12.05C, and award benefits rather than remanding for further consideration. Dkt. 14, pp. 8-14. At Step Three, the ALJ considers whether one or more of the claimant's impairments meets or equals an impairment listed in Appendix 1 to Subpart P of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). Each listing sets forth the "symptoms, signs, and laboratory findings" which must be established in order for a claimant's impairment to meet the listing. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If a claimant meets or equals a listing, the claimant is considered disabled without further inquiry. *See* 20 C.F.R. § 416.920(d).

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Here, because issues still remain in regard to the ALJ's further evaluation of Dr. Regets's determination regarding Plaintiff's IQ test, remand is warranted. Upon remand, the ALJ shall properly evaluate Dr. Regets's IQ test scores and determine whether to fully credit the test scores or discount them on another basis.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 5th day of December, 2016.

David W. Christel
United States Magistrate Judge